# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CAROLYN C.,**

     **Plaintiff,**

                                **Case No. 1:20-cv-3544**

     **v.**                             **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

     **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Carolyn C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I.    PROCEDURAL HISTORY

On May 13, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since July 9, 2011.[2] R. 161, 174, 235–36. The application was denied initially and upon reconsideration. R. 178–82, 184–86. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).
[2] Plaintiff later amended the disability onset date to December 22, 2015. R. 4, 102.

law judge. R. 188−89. Administrative Law Judge ("ALJ") Karen Shelton held a hearing on

November 15, 2018, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 97−121. In a decision dated January 30, 2019, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act at any time from

December 22, 2015, Plaintiff's alleged disability onset date, through March 31, 2017, the date on

which Plaintiff was last insured for disability benefits. R. 4−15. Plaintiff timely filed this appeal[3]

pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 19, 2020, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[4] On the same day, the case was

reassigned to the undersigned. ECF No. 14. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[3] The Appeals Council's denial for Plaintiff's request for review is not included in the record.
*Cf. Complaint*, ECF No. 1, p. 1 (referring to the Appeals Council's review); *Plaintiff's Brief*,
ECF no. 17, p. 1 (referring to the Appeals Council's denial of Plaintiff's request for review of
ALJ's denial).

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2017. R. 6. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 22, 2015, her amended alleged disability onset date, through March 31, 2017, her date last insured. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis of the bilateral knees, cervical spine disorder, lumbar spine disorder, cervical and lumbar radiculopathy, right carpal tunnel syndrome, left ulnar neuropathy, status post ulnar nerve transposition, and obesity. *Id*.  The ALJ also found that Plaintiff's alleged depressive disorder was not a medically determinable mental impairment. R. 7.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 7–9.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 9–14. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a medical records clerk. R. 14. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 22, 2015, her amended alleged disability onset date, through March 31, 2017, the date on which she was last insured. R. 15.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 17; *Plaintiff's*

*Reply Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.    RELEVANT MEDICAL EVIDENCE

In a letter dated June 9, 2015, Walter Poprycz, M.D., Plaintiff's treating orthopedist, described Plaintiff's 2011 knee surgeries and her conservative care in the years following those surgeries ("Dr. Poprycz's June 2015 letter"):

> [Plaintiff] underwent surgery on 12/01/2011, arthroscopic surgery of the left knee, microfracture of the medial femoral condyle, excision of neuroma scar of the left knee, and chondromalacia patella. Her diagnosis was a chondral defect of the medial femoral condyle and chondromalacia patella grade II and neuroma scar of the left knee.
>
> On 02/10/2011, the patient underwent arthroscopic surgery of the right knee with the partial medial meniscectomy and chondroplasty of the medial femoral condyle, lateral tibial plateau, and patella. She also has had some microfracture in the region of the lateral tibial plateau. Her postoperative diagnosis of the right knee was torn medial meniscus, chondromalacia grade II, medial femoral condyle, lateral tibial plateau, tibial patella with a torn medial meniscus, anterior one third.
>
> The patient has been followed over the years and is still being managed conservatively in the area. In general, the patient has arthritis of the knees and she was last seen on 05/22/2015 and given a cortisone shot into the right and left knee. She is still being managed with an exercise program and medications. She will be followed up again in three months' time.

R. 352.

On May 18, 2016, Dr. Poprycz completed a two-page form entitled "Clinical Assessment of Pain" ("Dr. Poprycz's May 18, 2016 Assessment"). R. 345−46. Although this form presented a series of six multiple choice questions, Dr. Poprycz wrote his own response to each question. *Id*. Specifically, in response to the question as to the significance of pain in Plaintiff's treatment,

Dr. Poprycz wrote: "Pain may interfere with act. of daily living occasionally[.]" R. 345. Asked to describe the extent o which physical activity such as walking, standing, bending, stooping, moving of extremities, etc., increase the pain that Plaintiff experiences, Dr. Poprycz responded: "Variable increase occasionally[.]" *Id*. In response to the question regarding the effect of prescribed medication, Dr. Poprycz wrote: "Medications help occasionally[.]" *Id*. Asked about the effect of pain on Plaintiff's ability to perform routine tasks on a productive basis (*i.e.*, perform at production levels expected by most employers) on a sustained basis over an eight-hour day for a number of weeks without frequent absences, Dr. Poprycz responded: "Sit down work is ok; no prolonged standing; no climbing[.]" *Id*. In response to the question about Plaintiff's long-term prospects of recovery from pain, Dr. Poprycz wrote that Plaintiff has "fair prospects[.]" R. 346. When asked to what extent treatment has lessened Plaintiff's pain, Dr. Poprycz responded: "Injections have helped[.]" *Id*.

Dr. Poprycz also completed a one-page check-the-box medical source statement, opining as to Plaintiff's ability to perform work-related physical activities. R. 344. Dr. Poprycz left blank the question asking how long Plaintiff can sit, stand, and walk in an eight-hour workday, *id*., but indicated that Plaintiff could lift up to ten pounds occasionally, but never more than ten pounds. *Id*. In response to the question asking whether Plaintiff can use her hands for repetitive actions such as simple grasping, pushing, and pulling, Dr. Poprycz checked the box marked "Yes" for both the left and right hands. *Id*. However, Dr. Poprycz left blank and wrote a question mark in response to the question about use of Plaintiff's hands for fine manipulation. *Id*. Dr. Poprycz responded "No" to the question whether Plaintiff can use both feet for repetitive movements such as operating foot controls (and he left the boxes blank when asked about the individual right foot and left foot). *Id*. Dr. Poprycz opined that Plaintiff could occasionally bend and reach above

9

shoulder level but could never stoop, squat, crawl, or climb. *Id*. Dr. Poprycz further opined that

Plaintiff was totally restricted from activities involving unprotected heights, being around

moving machinery, and exposure to dust, fumes, and gases. *Id*. Dr. Poprycz responded with a

question mark to questions regarding restrictions involving driving automotive equipment and

exposure to marked changes in temperature and humidity. *Id*.

In a letter dated May 23, 2016, Dr. Poprycz summarized Plaintiff's treatment and current

status, and provided his prognosis ("Dr. Poprycz's May 23, 2016 letter"):

> [Plaintiff] has been followed for moderate arthritis of the [sic] both knees verified
> arthroscopically and she underwent arthroscopic surgery of both knees with
> microfracture of the medial femoral condyle of the left knee and partial medial
> meniscectomy and chondroplasty of the medial femoral condyle of the right knee.
> The left knee was performed in 2011. The right knee was performed in February
> 2011 and postoperatively she has been managed conservatively. During the past
> year, she has undergone cortisone injections with temporary relief. On 12/15/15,
> she was followed up and had 1-1/2+ effusion of the right knee and underwent
> cortisone injection with temporary relief. On 02/16/16, she underwent cortisone
> injection of both knees. She has a history of swelling of the knees but no history of
> instability at that time and on 04/15/16, she was again followed up with erect knee
> x-rays and regular laterals of the right and left knees. Standing x-rays revealed
> moderate DJD [degenerative joint disease] of the right knee and slight DJD of the
> left knee. Arthroscopically, she has moderate arthritis of both knees. On 04/25/16,
> she underwent an injection of platelet-rich plasma. This was a concentrate of her
> own blood and on 05/17/16, she was followed up three weeks following the platelet
> rich plasma injection into the right knee. She felt some tightness feeling within the
> knee with no significant change in her symptoms. She does have a 1+ effusion of
> the right knee.
>
> IMPRESSION: Moderate DJD of the right knee and left knee[,] status post PRP
> [platelet-rich plasma] injection of the right knee and she will be followed up in the
> future on 06/17/16, hopefully the PRP injections will grant some relief to her
> symptoms. In the meantime, I am hopeful she would be able to do office type sit
> down work.

R. 343.

V.    **DISCUSSION**

A.    **RFC and Evaluation of Treating Medical Opinion and Subjective Statements**

Plaintiff contends that the ALJ erred in crafting Plaintiff's RFC. *Plaintiff's Brief*, ECF

No. 17, pp. 12−25; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1−4. Plaintiff specifically argues that

the ALJ erred in weighing the opinions of Dr. Poprycz, in evaluating Plaintiff's subjective

statements, and in failing to consider all of her severe impairments. *Id*. Plaintiff's arguments are

not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §

404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with

determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*

*v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

physicians or State agency consultants—must make the ultimate disability and RFC

determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to

consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ

need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ

has discretion to choose whether to include "a limitation [that] is supported by medical evidence,

but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ

cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also

has the discretion to include a limitation that is not supported by any medical evidence if the ALJ

finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light

work, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift or carry up to 10 pounds frequently and 20 pounds occasionally; sit up to 6 hours in an 8 hour day; stand or walk up to 4 hours in an 8 hour day; occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl; must avoid and have less than occasional exposure to extreme heat, cold, wetness, humidity, and pulmonary irritants; and cannot be exposed to unprotected heights and hazardous machinery.

R. 9. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, 2016 x-rays of the knees, which revealed moderate degenerative joint disease of the right knee and slight degenerative joint disease of the left knee; 2016 x-ray studies, which showed degenerative joint disease in the bilateral knees, more pronounced on the right and more pronounced at the medial joint compartment with otherwise preserved joint space and minimal evolving osteophytes; Dr. Poprycz's letters in which he noted that Plaintiff had undergone conservative care since her arthroscopic surgery of the left knee in December 2011 and right knee in February 2011, with temporary relief from cortisone injections and plasma knee injections in 2016: Dr. Poprycz's statement that he was hopeful that Plaintiff would be able to perform office sit down work and Dr. Poprycz's opinion that "sit down work is ok"; Dr. Poprycz's treatment notes which revealed decreased range of motion in the cervical spine and lumbar spine and bilateral knees, increased cold sensation about the left medial volar forearm in comparison to the right, diminished sensation at the L5-S1 dermatome, positive straight leg raising, and crepitus in the bilateral knees, but which also frequently indicated that Plaintiff could ambulate unassisted with a tandem gait, tenderness to palpation of the cervical and lumbar spines, negative Spurling sign, 5/5 muscle strength in the bilateral upper extremities, and only mild swelling in the right knee compared to the left knee; evidence that, in June and July 2016, Plaintiff underwent cervical epidural injections, which she tolerated well and was discharged

home with no difficulty ambulating; evidence that, in September 2016, Plaintiff underwent and tolerated well a knee injection; the opinions of state agency reviewing physicians Dr. Toros Shaninian and Dr. Nancy Simpkins, who opined that Plaintiff could lift or carry up to 10 pounds frequently and 20 pounds occasionally; sit up to 6 hours in an 8-hour day; stand or walk 4 to 6 hours in an 8-hour day; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; frequently stoop, kneel, crouch, or crawl; must avoid concentrated exposure to extreme heat, cold, wetness, humidity, and pulmonary irritants; and must avoid even moderate exposure to unprotected hazards; Plaintiff's testimony that she had no limitations in driving except in icy or snowy conditions and that she volunteers (putting together food baskets for veterans and sorting canned goods) approximately one hour (and is capable of volunteering up to four hours), four or five days per week and also volunteers at a homeless shelter; the fact that Plaintiff also takes care of her husband, cooks complete meals, does laundry, does the dishes, dusts, sweeps, vacuums, weeds, drives to her medical appointments, shops in stores for groceries, clothing, and household items, and socializes; and the fact that Plaintiff has not required emergency room visits or hospitalization for exacerbation of her symptoms. R. 10−14. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination, arguing that the ALJ erred in evaluating the opinions of her treating physician, Dr. Poprycz. *Plaintiff's Brief*, ECF No. 17, pp. 18−21; *Plaintiff's Reply Brief*, ECF No. 20, pp. 2−3. Plaintiff complains that the ALJ assigned more weight to the opinions of the state agency reviewing physicians even though Dr. Poprycz was Plaintiff's treating physician with a specialty in orthopedics. *Id*. Plaintiff contends that the ALJ's

13

error in this regard was not harmless because Dr. Poprycz's opinions "essentially limit" her to sedentary work, which, if fully credited, would result in a finding of disability at step five given Plaintiff's age, education, and vocational background. *Id*. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without such an explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec*., 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec*., 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight")

(citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a

treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, as detailed above, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work subject to certain additional limitations. R. 9. In reaching this determination, the ALJ assigned "some weight" to Dr. Poprycz's opinions, reasoning as follows:

> The record documented conservative, routine care for the claimant's impairments during the period at issue. In letters dated June 9, 2015 and May 23, 2016, Walter Poprycz, M.D., an orthopedist at Professional Orthopedic Associates of Southern New Jersey, remarked that the claimant has had postoperative conservative care since her arthroscopic surgery of the left knee in December 2011 and right knee in February 2011 (Exhibit B2F at 1, 10). The claimant reportedly underwent cortisone injections with temporary relief as well as plasma knee injections in April and May 2016 (id at 1). In his May 23, 2016 letter, Dr. Poprycz remarked that he was hopeful the claimant would be able to do office type sit down work (id. at 1). Similarly, in a report dated May 18, 2016, Dr. Poprycz opined that the claimant cannot do work involving climbing and prolonged standing and that "sit down work is ok" (Exhibit B2F at 3). Some weight is given to Dr. Popcrycz's opinion because of his medical specialization in the applicable field of orthopedics and treatment relationship with the claimant. However, treatment notes showed the claimant is less limited. Examinations demonstrated decreased range of motion in the cervical spine and lumbar spine and bilateral knees, increased cold sensation about the left medial volar forearm in comparison to the right, diminished sensation at the L5-S1 dermatome, positive straight leg raising, and crepitus in the bilateral knees but frequently showed the claimant to ambulate unassisted with a tandem gait, to tenderness to palpation of the cervical and lumbar spines, negative Spurling sign, 5/5 muscle strength in the bilateral upper extremities, and only mild swelling to the right knee compared to the left knee (Exhibit B4F, B5F). In addition, treatment notes show essentially a conservative course of postoperative care and the claimant is capable of a wide range of reported daily activities, discussed in detail below.

R. 11.

16

In a medical source statement dated May 18, 2016, Dr. Poprycz opined that the claimant can lift or carry up to 10 pounds occasionally, cannot use the feet for repetitive movements like operating foot controls, occasionally bend and reach above shoulder level, never stoop, squat, crawl, or climb, and is totally restricted from unprotected heights, being around moving machinery, and exposure to dust, fumes, and gases (Exhibit B2F at 2). Some weight is given to Dr. Popcrycz's opinion because of his medical specialization in the applicable field of orthopedics and treatment relationship with the claimant. However, treatment notes showed the claimant is less limited. Examinations demonstrated decreased range of motion in the cervical spine and lumbar spine and bilateral knees, increased cold sensation about the left medial volar forearm in comparison to the right, diminished sensation at the L5-S1 dermatome, positive straight leg raising, and crepitus in the bilateral knees but frequently showed the claimant to ambulate unassisted with a tandem gait, to tenderness to palpation of the cervical and lumbar spines, negative Spurling sign, 5/5 muscle strength in the bilateral upper extremities, and only mild swelling to the right knee compared to the left knee (Exhibit B4F, B5F). In addition, treatment notes show essentially a conservative course of postoperative care and the claimant is capable of a wide range of reported daily activities, discussed in detail below.

R. 12.

The Court finds no error with the ALJ's reasoning in this regard. The ALJ explicitly considered Dr. Popcrycz's specialty and treating relationship with Plaintiff but discounted his opinions because (1) treatment notes reflecting Dr. Popcrycz's findings upon physical examinations revealed Plaintiff to be less limited; (2) a conservative course of postoperative care; and (3) Plaintiff's apparent ability to perform a wide range of reported daily activities. R. 11–12. Substantial evidence supports the ALJ's reasoning in this evaluation of Dr. Poprycz's opinions. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history as a factor that supported the ALJ's determination to discount the claimant's subjective complaints); *Kiefer v. Saul*, No. CV 19-547, 2020 WL

1905031, at *3 (W.D. Pa. Apr. 17, 2020) (finding that the ALJ gave "valid and acceptable reasons for discounting the weight accorded" to treating opinions because those opinions were, *inter alia*, "inconsistent with the conservative approach to her treatment") (citing 20 C.F.R. §§ 404.1527, 416.927); *cf. Metzger v. Saul*, No. CV 19-270, 2019 WL 3530442, at *7 (E.D. Pa. Aug. 2, 2019) ("Moreover, courts have consistently held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes.") (citations omitted); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *6 (D.N.J. Nov. 27, 2018) (finding that substantial evidence supported the ALJ's decision to discount a treating physician's opinion where, *inter alia*, the "opinion was not consistent with the Plaintiff's own testimony").

Plaintiff nevertheless complains that the ALJ erred in assigning "significant weight" to the state agency reviewing physicians' opinions, dated July 19, 2016, and October 4, 2016, where "neither Drs. Shaninian nor Simpkins contemplated the Plaintiff's right carpal tunnel syndrome or left ulnar neuropathy requiring ulnar nerve transposition surgery as part of their assessments" and where the non-treating state agency physicians did not have access to the entire file because their opinions were issued prior to "most of these treating notes being generated regarding these impairments[.]" *Plaintiff's Brief*, ECF No. 17, p. 20; *Plaintiff's Reply Brief*, ECF No. 20, p. 3. Plaintiff's arguments are not well taken. As a preliminary matter, both state agency reviewing physicians noted that Plaintiff had been diagnosed with carpal tunnel syndrome and left ulnar neuropathy, status post left cubital tunnel decompression. (Tr. 158, 171 ("DX. RT CTS, Left Ulnar Neuropathy S/P cubital tunnel decompression on the left"). Moreover, state agency physicians are experts in Social Security disability programs. SSR 96-6p. An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between

the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Accordingly, the ALJ did not err when assigning significant weight to the reviewing state agency physicians' opinions issued in July and October 2016 simply because additional evidence was later submitted. *See id.*; *see also* R. 12−13, 1090−98, 1100−08, 1110−18, 1120−28. Finally, "[s]imply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not, as discussed in the aforementioned precedent, mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 3:14-CV-2337, 2016 WL 1071021, at *12 (M.D. Pa. Mar. 17, 2016); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration"). For these reasons, the ALJ did not err in assigning "significant weight" to the state agency reviewing physicians.

In continuing to challenge the RFC determination, Plaintiff also argues that the ALJ erred in considering Plaintiff's subjective complaints, which Plaintiff contends were supported by medical evidence. *Plaintiff's Brief*, ECF No. 17, pp. 21−25. Plaintiff's arguments are not well taken. "Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §
416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective
complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20
C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a
claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the
ALJ "must consider whether there is an underlying medically determinable physical or mental
impairment(s) that could reasonably be expected to produce an individual's symptoms, such as
pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably
be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the
intensity and persistence of those symptoms to determine the extent to which the symptoms limit
an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181
F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or
symptom and the extent to which it affects the ability to work] obviously requires the ALJ to
determine the extent to which a claimant is accurately stating the degree of pain or the extent to
which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this
evaluation, an ALJ must consider the objective medical evidence as well as other evidence
relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following
factors to consider: daily activities; the location, duration, frequency, and intensity of pain or
other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side
effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,
other than medication, currently received or have received for relief of pain or other symptoms;
any measures currently used or have used to relieve pain or other symptoms; and other factors
concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

20

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[5]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 9−11, 13−14. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 10. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support the ALJ's findings. R. 10−14. The ALJ also specifically noted that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the record." R. 10. In addition, when assessing Plaintiff's subjective complaints, the ALJ noted Plaintiff's daily activities were inconsistent with the extent of her claimed physical limitations, reasoning as follows:

> The claimant's reported daily activities are greater than one might expect, given her allegations of physical disability. As noted, the claimant indicated at the oral hearing that she has no difficulty taking care of her personal needs. The claimant drives and regularly does volunteer work at the American Legion. She testified that the organization recently has been putting together food baskets for veterans and

---

[5] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

she helps by sorting canned goods. In an Adult Function Report dated May 2016, the claimant indicated that she takes care of her husband, cooks complete meals, does laundry, does the dishes, dusts, sweeps, vacuums, weeds, and drives to her medical appointments (Exhibit B4E). She also reported that she shops in stores for groceries, clothing, and household items, socializes and volunteers at the American Legion as well as a Veteran Homeless Shelter (id.). The undersigned further finds that the claimant's daily activities are consistent with the above residual functional capacity.

As for the claimant's reports of symptoms, his [sic] reported ability to lift a 10-pound bag of potatoes, gallon of milk and can walk for two to three hours on a flat surface does not tend to preclude light work. The claimant's allegations regarding difficulty walking on uneven surfaces is not corroborated by treatment notes. Treatment notes frequently showed ability to walk with a tandem gait with no use of an assistive device (Exhibit B4F).

The course of treatment does not support the claimant's allegation of disability. As discussed in detail above, the claimant has had limited conservative care for her impairments during the period at issue consisting of routine office visits, injections, and medication management. She has not required emergency room visits or hospitalization for exacerbation of her symptoms. For these reasons, the claimant's allegations and testimony are rendered less compelling.

In sum, the overall record does not support the severity of the claimant's allegations. The clinical and diagnostic evidence related to the claimant's impairments provides support for the residual functional capacity for light exertion with the additional postural and environmental limitations noted above. However, the claimant's own reports of a relatively broad range of daily activities and the lack of more substantial treatment, during the period at issue, for her allegations of persistent pain and limited mobility establish that no further restrictions are justified.

R. 13–14. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges the ALJ's assessment of her subjective complaints, arguing that the ALJ's discounting of her subjective statements, which included testimony regarding numbness in her fingers and difficulty with writing, grasping, lifting, carrying, and other hand use, was "contradictory as, again, the ALJ made a finding that the Plaintiff has multiple severe

22

impairments that affect her bilateral hands." *Plaintiff's Brief*, ECF No. 17, pp. 23−24. This Court disagrees. Plaintiff has not explained, with citation to record evidence, how a finding of a severe impairment at step two establishes that Plaintiff has all the alleged limitations that she alleges. *See generally id*. Notably, "[a] diagnosis alone, however, does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, as detailed above, the ALJ specifically noted how evidence in the record undermined the severity of Plaintiff's allegations, including, *inter alia*, her volunteer work putting together food baskets and sorting canned goods; her daily activities including, cooking complete meals, doing laundry and the dishes, sweeping, vacuuming, weeding, and driving; 5/5 muscle strength in bilateral upper extremities; her ability to lift a 10-pound bag of potatoes and gallon of milk; and Dr. Poprycz's opinion that she could perform "sit down work." R. 11−14.

Plaintiff also contends that the ALJ erred in discounting, in part, her subjective statements because her treatment was "conservative," arguing that the ALJ's finding in this regard ignores that Plaintiff underwent a cervical rhizotomy, a right arthroscopic knee surgery on December 6, 2016, other surgery prior to her alleged disability onset date and after her date last insured, and that another provider recommended that Plaintiff undergo a fusion of the cervical spine at C4-5 and C5-6 and an instrumented fusion of the lumbar spine at L5-S1. *Plaintiff's Brief*, ECF No. 17. Plaintiff's argument does not require remand on this issue. As a preliminary matter and as detailed above, the ALJ specifically noted Plaintiff's history of arthroscopic

surgery in both knees and relied on Dr. Poprycz's characterization in his letters dated June 9, 2015, and May 23, 2016, that Plaintiff's care following her knee surgeries in 2011 prior to the alleged onset date of December 22, 2015, had been conservative. R. 10−11, 343, 352. Moreover, Plaintiff has not explained how the December 2016 arthroscopic knee surgery requires different or greater limitations than those found in the RFC determination, where she conceded in the months following surgery that her bilateral knee pain limited only her "ability to ambulate long distances, climbing/descending stairs, as well as rise from a low-seated chair." R. 373; *see also* R. 9 (reflecting RFC determination restricting Plaintiff to, *inter alia*, walking up to 4 hours in an 8-hour day and occasionally climbing stairs); *cf. See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). In any event, even if the ALJ erred in characterizing Plaintiff's care as conservative, this was but one of many factors that the ALJ considered when evaluating Plaintiff's subjective statements. R. 11−14.

Plaintiff goes on to argue that the ALJ erred in assessing Plaintiff's subjective statements when the ALJ did not "tak[e] into account her outstanding work history prior to the alleged onset date." *Plaintiff's Brief*, ECF No. 17, pp. 24−25. The Court is not persuaded that this issue requires remand. As a preliminary matter, the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss [the claimant's] years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Gulin v. Comm'r of Soc. Sec.*, No. CIV.A. 13-01897, 2014 WL 1466488, at *14 (D.N.J. Apr. 14, 2014) (finding that "the ALJ properly evaluated Plaintiff's

credibility based on the entire record, including the available objective medical evidence" and that the ALJ "did not entirely ignore Plaintiff's work history. While she did not explicitly state that Plaintiff had worked for the NJDOT for twenty-three years, she did note that Plaintiff had worked for the NJDOT and that he took a medical retirement"). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. Accordingly, the Court concludes that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See id*.; SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec*., 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

Finally, in further challenging the RFC determination, Plaintiff argues that although the ALJ specifically found the severe impairments of, *inter alia,* right carpal tunnel syndrome, left ulnar neuropathy, and status post ulnar nerve transposition at step two, the ALJ failed to consider these impairments when crafting the RFC at step four. *Plaintiff's Brief*, ECF No. 17, pp. 12–18; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1–2. Plaintiff specifically contends that this error is not harmless because the RFC determination contains no restriction related to reaching, handling, finger, or feeling with either upper extremity, and because the inclusion of restrictions in these areas in Plaintiff's RFC would preclude her ability to perform her past relevant work as a

25

medical records clerk. *Id*. Plaintiff's arguments are not well taken. While the ALJ did not specifically identify Plaintiff's severe impairments of right carpal tunnel syndrome, left ulnar neuropathy, and status post ulnar nerve transposition at step four, the ALJ, when crafting the RFC, specifically noted Plaintiff's complaints of numbness in her fingers and difficulty writing and grasping, and considered other evidence including, *inter alia*, that Plaintiff volunteered putting together food baskets and sorting canned goods; her daily activities that included cooking complete meals, doing laundry and the dishes, sweeping, vacuuming, weeding, and driving; 5/5 muscle strength in bilateral upper extremities; her ability to lift a 10-pound bag of potatoes and gallon of milk; and Dr. Poprycz's opinion that she could perform "sit down work." R. 10−14. Fairly read, the ALJ's opinion indicates that the ALJ, in crafting the RFC, considered Plaintiff's right carpal tunnel syndrome, left ulnar neuropathy, and status post ulnar nerve transposition and was aware of how those condictions impacted Plaintiff's ability to function as required by the regulations.

Moreover, the ALJ assigned "significant weight" to the state agency reviewing physicians, who considered that Plaintiff had been diagnosed with carpal tunnel syndrome, left ulnar neuropathy, and status post left cubital tunnel decompression, when they made their RFC findings, which included no manipulative limitations. R. 12−13, 157−58, 170−71; *cf. Rodriguez v. Colvin*, No. CV 14-6461, 2017 WL 462630, at *7 (D.N.J. Feb. 3, 2017) (considering "whether the ALJ's failure to consider Plaintiff's asthma, headaches, GERD, and insomnia in the RFC analysis mandates remand" and finding, *inter alia*, that the "ALJ is deemed to have considered Plaintiff's complaints of asthma, headaches, and GERD because the state agency physicians [whose opinions the ALJ adopted] were aware of these impairments").

Additionally and significantly, Plaintiff cites to no medical opinion that identifies any functional limitations flowing from her carpal tunnel syndrome, left ulnar neuropathy, and status post left cubital tunnel decompression. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 20. Notably, Dr. Poprycz, Plaintiff's treating orthopedist, whose opinions Plaintiff contends should have been afforded greater weight, specifically opined that Plaintiff could use both her hands for simple grasping, pushing, and pulling and failed to indicate that Plaintiff had any limitations in her ability to engage in fine manipulation. R. 344.

To the extent that Plaintiff relies on her own subjective statements to support limitations in reaching, handling, fingering, or feeling with her upper extremities, the ALJ properly discounted those statements for the reasons previously discussed. As noted above, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554.

In any event, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*. Based on this record, Plaintiff has not shown that the ALJ committed error in failing to explicitly identify Plaintiff's severe impairments of carpal tunnel syndrome, left ulnar neuropathy, and status post left cubital tunnel

decompression and, if she did err, any such error was harmless in the absence of medical evidence supporting any limitations flowing from these impairments. *Id.*; *Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of Walter Poprycz, M.D., and of Plaintiff's subjective complaints.

### B.   Past Relevant Work

Plaintiff also argues that the ALJ's determination that she could perform her past relevant work as a medical records clerk was not supported by substantial evidence. *Plaintiff's Brief*, ECF No. 17, pp. 9–12; *Plaintiff's Reply Brief*, ECF No. 20, pp. 4–7. This Court disagrees.

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). The ALJ considers whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In making this assessment, the ALJ must do three things:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting *Burnett*, 220

F.3d at 120). SSR 82-62 identifies the evidence that an ALJ should consider in making this

determination, particularly the claimant's statements about past work:

> The claimant is the primary source for vocational documentation, and statements
> by the claimant regarding past work are generally sufficient for determining the
> skill level, exertional demands and nonexertional demands of such work.
> Determination of the claimant's ability to do [past relevant work] requires a careful
> appraisal of (1) the individual's statements as to which past work requirements can
> no longer be met and the reason(s) for his or her inability to meet those
> requirements; (2) medical evidence establishing how the impairment limits ability
> to meet the physical and mental requirements of the work; and (3) in some cases,
> supplementary or corroborative information from other sources such as employers,
> the Dictionary of Occupational Titles, etc., on the requirements of the work as
> generally performed in the economy.

SSR 82-62; *see also Garibay*, 336 F. App'x at 158 (stating that when considering whether the

claimant retains the capacity to perform the functional demands and job duties of the job as

ordinarily required by employers, "the ALJ may rely on job descriptions found in the Dictionary

of Occupational Titles ("DOT")").

    When evaluating vocational evidence, an ALJ should determine whether "the claimant

retains the capacity to perform the particular functional demands and job duties peculiar to an

individual job as he or she actually performed it" or whether "the claimant retains the capacity to

perform the functional demands and job duties of the job as ordinarily required by employers

throughout the national economy." SSR 82-61. In connection with this latter consideration, "if

the claimant cannot perform the excessive functional demands and/or job duties actually required

in the former job, but can perform the functional demands and job duties as generally required by

employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id*.

    Here, the vocational expert identified Plaintiff's past relevant work as a medical records

clerk, DOT 245.362-010, which was a light exertional, semi-skilled position. R. 117. The ALJ

determined that Plaintiff was capable of performing this past work because that work did not require the performance of work-related activities precluded by Plaintiff's RFC:

> Through the date last insured, the claimant was capable of performing past relevant work as a medical records clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> The claimant has past relevant work as a medical records clerk, which is generally described as light exertional work with a SVP of 4 (DOT 245.362-010).
>
> The claimant has the residual functional capacity for light exertional work and her additional postural limitations set forth above, do not preclude performance of her past relevant work as a medical records clerk as actually and generally performed.
>
> The findings of the undersigned are supported by the testimony of the impartial vocational expert. The impartial vocational expert testified the claimant's past relevant work as a medical records clerk would not require more than four hours standing and walking, notwithstanding that the DOT classifies it as light.

R. 14.

Plaintiff challenges this finding, arguing that the vocational expert's testimony was "contradictory" and that the ALJ did not identify and resolve conflicts with the DOT and, therefore, the vocational expert testimony does not support the conclusion that Plaintiff could perform her past relevant work, either as generally performed or as actually performed. *Plaintiff's Brief*, ECF No. 17, pp. 9–12; *Plaintiff's Reply Brief*, ECF No. 20, pp. 4–7. Plaintiff's counsel, however, never objected or challenged the vocational expert's testimony in any way, including challenging it as inconsistent with the DOT. R. 117–20. Although Plaintiff now contends that she "is not aware of any statute, regulation or any information in the Hallex that a failure to raise an issue at an administrative hearing results in forfeiture of further review of that issue[,]" *Plaintiff's Reply Brief*, ECF No. 20, p. 6, this Court and at least one other district court in this circuit have found that a failure to challenge a vocational expert's testimony at the hearing waives Plaintiff's right to later object to that testimony. *See Tonti v. Saul*, No. CV 20-92, 2021

WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling). Plaintiff's current attempt to raise a discrepancy between the vocational expert's testimony and the DOT or to otherwise challenge the vocational expert's testimony to the extent that it supports the ALJ's conclusion that Plaintiff was capable of performing her past relevant work therefore comes too late and will not serve as a basis to remand this matter. *See id.*

However, even if the Court considered the merits of Plaintiff's challenges, her arguments are unavailing for the reasons that follow.

### 1.    Work as generally performed

Plaintiff first challenges the ALJ's finding that Plaintiff could perform her past relevant work as it is generally performed, arguing that the RFC ultimately found by the ALJ "is a legal impossibility as Light Work" because the RFC limits her to only four hours of standing and walking. *Plaintiff's Brief*, ECF No. 17, pp. 9–10; *Plaintiff's Reply Brief*, ECF No. 20, pp. 4–7. Plaintiff further argues that the ALJ "relied on a supposed Light RFC which, as written, is truly a Sedentary RFC and therefore incompatible with this occupation as defined by the DOT." *Plaintiff's Brief*, ECF No. 17, p. 9. Plaintiff therefore concludes that "with respect to the work as generally performed, the VE's testimony is faulty and cannot be accepted as Light work requires

the ability to stand and walk for more than 4 hours a day that Plaintiff is limited to, per the

Commissioner's own RFC." *Id* at 10 (citing SSR 00-4p).

Plaintiff's arguments are not well taken. The Social Security Administration defines light

work as having the following exertional requirements:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
> be very little, *a job is in this category when it requires a good deal of walking or
> standing*, or when it involves sitting most of the time with some pushing and pulling
> of arm or leg controls. *To be considered capable of performing a full or wide range
> of light work, you must have the ability to do substantially all of these activities*. If
> someone can do light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). SSR 83-10 explains that "the *full range* of light work

requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday." SSR 83-10, 1983 WL 31251, at *6 (emphasis added). However, as the Acting

Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, pp.

11–12, nothing precludes an ALJ from concluding that a claimant can perform a reduced range

of light work with a limitation of standing or walking up to 4 hours in an 8-hour workday, and

relying on vocational testimony that the claimant can perform a specific job classified as light

work. Notably, district courts in this circuit, including this Court, have affirmed the denial of

benefits where the ALJ crafted a RFC for a reduced range of light work that limited the claimant

to no more than four hours of walking or standing. *See Minor v. Saul*, No. 2:19-CV-13171, 2021

WL 1207477, at *6 (D.N.J. Mar. 31, 2021) (affirming denial of benefits where ALJ found the

claimant "could perform a limited range of light work" where, *inter alia*, the claimant could

"stand[] or walk[] for four hours during an eight-hour workday and sit[] for six hours during an

eight-hour workday"); *Williams v. Saul*, No. CV 19-1641, 2020 WL 5912806, at *3 (W.D. Pa.

Oct. 6, 2020) (rejecting the plaintiff's argument that a physician "limited Plaintiff to sedentary work and not light work as found by the ALJ" where the physician found that the plaintiff could, *inter alia*, "stand/walk for up to 4 hours with normal breaks and sit for up to 6 hours at a time with normal breaks"); *Mercado v. Comm'r of Soc. Sec. Admin*., No. CV 17-4250, 2018 WL 5818536, at *5 (D.N.J. Nov. 7, 2018) (affirming ALJ's decision where the ALJ classified the RFC with 4 hours of standing and walking as "light work"); *Roque v. Colvin*, No. 3:14-CV-2182, 2015 WL 2451758, at *21 (M.D. Pa. May 21, 2015) (rejecting the plaintiff's argument that because SSR 83-10 states that the full range of light work requires standing or walking for a total of approximately 6 hours of an 8-hour workday, the ALJ's limiting Plaintiff to four hours of standing "is inconsistent with the definition of light work" because "[w]hile it may be that a full range of light work requires standing or walking for a total of approximately six hours of an eight-hour day, the ALJ did not find that Plaintiff could perform a full range of light work—she found that Plaintiff could perform light work with limitations"). Moreover, an ALJ may rely on vocational expert testimony to find that a claimant can perform past relevant work, including where a claimant who can stand and walk for only 4 hours a day can perform past work classified as light work. *Siecienski-Antinoro v. Comm'r of Soc. Sec*., No. CV 19-19756, 2020 WL 4670915, at *5 (D.N.J. Aug. 12, 2020) (affirming denial of benefits where, *inter alia*, the ALJ found that the claimant "has the RFC to perform light work" except that the claimant was limited to, *inter alia*, the ability to "stand and walk four hours and sit six hours in an eight-hour workday" and, relying on vocational expert testimony, concluded that Plaintiff was able to perform past work as generally performed and actually performed); *see also* 20 C.F.R. § 404.1560(b)(2) ("[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental

limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.").

That is exactly what happened in this case. The hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 117–18. The vocational expert responded that such an individual would be able to perform the work of medical records clerk as generally performed and as actually performed by Plaintiff. R. 118. The ALJ went on specifically question the vocational expert about the ability to perform Plaintiff's past work classified as "light" with a RFC of walking/standing for four hours a day:

Q All right, the fact that the DOT classifies it as light, which is lifting -- which is standing and walking up to six of eight hours, can you explain how those two things are consistent?

A Yes.

Q Can you please explain how they are consistent?

A Given the nature of the job duties as performed and with this (INAUDIBLE) the same, both are classified as light.

Q Okay. Does this job require more than four hours of standing and walking during the day in your opinion?

A I believe that the mixture of sit/stand/walk would equal that, yes. Would equal. I don't think it would be more than that.

Q Would equal, what, the four hours?

A The four hours, correct. It's the mixture of sit/stand/walk.

Q So it's your opinion that there's no more than four hours of standing and walking in this job notwithstanding it'[s] classified at light, is that correct?

A Correct, yes, it is, yeah.

34

R. 118−19. The ALJ's finding that Plaintiff, with a RFC of, *inter alia*, standing/walking for 4 hours in an 8-hour day, was capable of performing her past relevant light work as a medical records clerk as generally performed was reasonably based on the vocational expert's testimony, which provides substantial support for the ALJ's finding.

Plaintiff, however, contends that an ALJ cannot rely on vocational expert testimony to find that a job listed in the DOT at a certain exertional level is generally performed in the national economy at a different exertional level. *Plaintiff's Brief*, ECF No. 17, p. 10 (citing SSR 00-4p). Plaintiff's argument is not well taken. SSR 00-4p instructs that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and that a vocational expert "may be able to provide more specific information about jobs or occupations than the DOT." 2000 WL 1898704, at *3. That is precisely what occurred in this case: The vocational expert specified that the work of medical records clerk required no more than four hours of standing and walking even though it was classified as a job requiring light exertion. R. 119. Moreover, as the Acting Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, p. 13, the DOT does not require a specific, mandatory amount of walking or standing. DOT 245.362-010, 1991 WL 672269 (noting, *inter alia*, that "a job should be rated Light Work" when, *inter alia*, "it requires walking or standing to a significant degree"). The ALJ therefore appropriately relied on the vocational expert's testimony explaining the walking/standing requirements of this particular job. *See Knight v. Colvin*, No. CV 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) ("The ALJ's reliance on this evidence was reasonable, especially in light of the fact that the DOT provides the maximum requirements for occupations as generally performed, not the requirements for a specific job in a specific setting. A VE can provide more specific

information about a specific job, which is precisely what happened here.") (citing SSR 00-4p, at *3).

Plaintiff nevertheless contends that the vocational expert "stumbled through contradictory non-answers" and that only in response to the ALJ's impermissible "leading question" did the vocational expert agree that Plaintiff's past relevant work required no more than four hours of walking/standing. *Plaintiff's Reply Brief*, ECF No. 20, pp. 4−5 (citing R. 118−19). Plaintiff therefore argues that "[w]ithout the identification and resolution of this conflict by the ALJ in accordance with SSR 00-04p this material issue is left unsettled." *Id*. at 5. Plaintiff's arguments are not well taken. As a preliminary matter, for the reasons previously discussed, there is no apparent conflict between the DOT and the vocational expert's testimony. *Cf. Kowal v. Saul*, No. CV 18-1350, 2020 WL 490962, at *3 (W.D. Pa. Jan. 30, 2020) ("Where the DOT is silent on an issue, however, a conflict does not exist.") (collecting cases). However, even if there were a conflict, the testimony detailed above more than adequately resolved any such conflict. R. 118−19. Plaintiff complains that the question posed by the ALJ to the vocational expert was "leading," a characterization that the Court rejects. Rather, the ALJ merely sought clarification of the vocational expert's testimony. *See* R. 119. In any event, leading questions by an ALJ do not necessarily warrant remand. *Dove v. Comm'r of Soc. Sec.*, No. 3:17 CV 1630, 2018 WL 3548842, at *9 (N.D. Ohio July 24, 2018) ("That the ALJ elicited the requisite testimony of the VE through leading questions is not error."). For all these reasons, the ALJ's reliance on the vocational expert's testimony in this regard and her ultimate determination, *i.e.,* that Plaintiff retains the RFC to perform her past relevant work as a medical records clerk as it is generally performed at the light level, therefore enjoys substantial support in the record. *See* SSR 82-62; SSR 82-61 (providing, *inter alia*, that the ALJ should find the claimant "not disabled" if the

claimant "can perform the functional demands and job duties as generally required by employers throughout the economy").

### 2.     Work as actually performed

Having found that the ALJ's finding that Plaintiff was capable of performing her past relevant work as generally performed, the Court need not address Plaintiff's additional challenge to the ALJ's finding that she could perform her job as she actually performed it in order to affirm the ALJ's decision denying benefits. *See* SSR 82-61; *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 159−60 (3rd Cir. 2009) (concluding at step four that, although the ALJ erred in finding that the claimant could perform her past relevant work as actually performed, substantial evidence in the record supported the ALJ's finding that the claimant had the RFC to perform the work as it was generally performed). However, the Court notes that Plaintiff's argument that she was unable to perform her past work as she actually performed it is based on, *inter alia*, evidence that was not before the ALJ. *See Plaintiff's Brief*, ECF No. 17, p. 11 (citing Exhibit A), Exhibit A, attached thereto (printouts purporting to reflect that a box of copy paper weighs between 40 and 50 pounds). It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Id*. at 593; *see also* Sentence Six of 42 U.S.C. § 405(g) (providing, *inter alia*, that the court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate

such evidence into the record in a prior proceeding"). Here, Plaintiff does not ask for remand, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence. *See generally Plaintiff's Brief*, ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 20. Significantly, Plaintiff has made no showing that the information contained in Exhibit A is new and material, and that good cause exists for her failure to present it to the ALJ. *See id. See also Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, p. 14 n.1.

As previously discussed, Plaintiff's counsel neither challenged the vocational expert's qualifications nor objected to his testimony at the administrative hearing. R. 117−21. Accordingly, the ALJ did not err in relying on the ALJ's uncontested testimony that Plaintiff could perform her past relevant work of medical records clerk as she actually performed it. R. 118−19.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 22, 2021                               *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE